**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DR. ASHLEY BECKER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 3:25-CV-1935-MAB[2] |
| | ) | |
| BOARD OF TRUSTEES OF | ) | |
| SOUTHWESTERN ILLINOIS | ) | |
| COLLEGE, COMMUNITY COLLEGE | ) | |
| DISTRICT NO. 522,[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Dr. Ashley Becker began her employment as the Dean of Business, Health Sciences, and Homeland Security at Southwestern Illinois College in January 2021 (Doc. 1, para. 16). In the spring of 2024, the College's Board of Directors declined to renew her contract and her employment ended in approximately June 2024 (Doc. 1, para. 16, 203–04). Dr. Becker initiated this lawsuit in October 21, 2025 against Southwestern Illinois College—with a detailed and thorough 47-page complaint—alleging sex discrimination (Count I), hostile work environment (Count II), and retaliation (Count III) in violation of Title VII of the Civil Rights Act of 1964 (Doc. 1). The College responded to Dr. Becker's

---

[1] The common name under which the community college operates is Southwestern Illinois College. The Court will refer to the college by its common name throughout this Order.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*see* Doc. 16).

complaint with a motion to dismiss (Doc. 17), which is currently before the Court.[3]

For the reasons outlined below, the motion to dismiss is denied. The College will be ordered to file an Answer to Dr. Becker's Complaint.

## A.   DISMISSAL UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

The College first argues that this matter should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction because Dr. Becker failed to exhaust her administrative remedies (Doc. 17, pp. 3–4). This argument fails for two reasons. First, as the Supreme Court explained, Title VII's charge-filing requirement is not jurisdictional. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 551 ("Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of the courts."). Second, Dr. Becker demonstrated that she did, in fact, receive a Right to Sue letter from the U.S. Department of Justice Civil Rights Division on July 23, 2025 (Doc. 18-1), and she filed suit within 90 days (Doc. 1).

## B.   DISMISSAL UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

The College next argues that all three counts of Dr. Becker's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim (Doc. 17, pp. 4–8). In deciding whether the complaint sufficiently states a claim, the court must "construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (citation omitted). To survive a 12(b)(6) motion to dismiss, a complaint must contain

---

[3] Plaintiff filed a response in opposition to the motion (Doc. 18). Defendant did not file a reply.

sufficient factual matter to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007), and plausibly suggest that the plaintiff has a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together[.]'" *Carlson*, 758 F.3d at 826–27 (quoting *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404–05 (7th Cir. 2010)). "In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Swanson*, 614 F.3d at 404–05 (emphasis in original). *See also Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990) ("The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.") (citation omitted). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

### 1. Sex Discrimination

The College argues that Dr. Becker failed to state a claim for sex discrimination in Count 1 because she did not allege that she was treated less favorably than a similarly situated employee and did not even identify a similarly-situated employee in her Complaint (Doc. 17, pp. 6–7). This argument, however, is based on the legal standard for *proving* a prima facie case of sex discrimination using the *McDonnell Douglas* burden-shifting framework. *See Lewis v. Wilkie,* 909 F.3d 858, 867 (7th Cir. 2018). The Seventh Circuit has very clearly instructed that in *pleading* a sex discrimination claim, a "plaintiff

is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination . . . ." *Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 827 (7th Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511–12 (2002)). *See also Zimmerman v. Bornick,* 25 F.4th 491, 493 (7th Cir. 2022) ("[F]ederal pleading standards do not 'demand that complaints contain all legal elements (or factors) [of a particular legal theory] plus facts corresponding to each.'") (quoting *Chapman v. Yellow Cab Coop.,* 875 F.3d 846, 848 (7th Cir. 2017). Rather, "[a] complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'" *Carlson*, 758 F.3d at 827 (quoting *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)).

Here, Dr. Becker has alleged, amongst other things, that she was paid less than her male counterparts for the same/similar work, she was denied a promotion that went to a less qualified male, changes were made to her job title, responsibilities, and departments, and her employment was ultimately terminated because she is female and the College's predominantly male Board either viewed her as being problematic because she was strong-willed, outspoken, and making waves or the Board simply preferred to have a male in her position (*see* Doc. 1, para. 43–47, 126–30, 136, 168–87, 200–11, 223–34). Dr. Becker supported her claims with many factual allegations (*see, e.g.,* Doc. 1, para. 19, 23–53, 60–78, 89, 93, 96–114, 133–37, 143, 147–153, 166–74, 178–80, 183–87, 193–98), which the Court must accept as true at this stage. Dr. Becker has thus easily satisfied the pleading standard for a Title VII sex discrimination claim.

### 2. Hostile Work Environment

The College next argues that Dr. Becker failed to state a claim for hostile work environment because she failed to allege sufficient facts showing she was subjected to unwelcome harassment (Doc. 17, p. 7). The entirety of the College's argument is that Dr. Becker used the word "harassment" only once in the factual allegations of her complaint and that statement was a legal conclusion (*Id.*).

The College's contention completely ignores the substance of Dr. Becker's factual allegations. The Complaint contains dozens of pages with factual allegations demonstrating that during her employment at the College, Dr. Becker learned of, witnessed, and experienced the College's senior male leadership and Board members treating female leaders in an inferior and markedly different fashion than males. For example, Dr. Becker alleges that the female leaders were infantilized (*e.g.*, called "kiddo") and were not called by their professional titles, while the men were (Doc. 1, para. 39–42). She also alleges that female leaders were excluded from important decision-making processes and meetings at the institution (*Id.* at para. 24, 49). When the females were invited, the senior male leadership and Board members demeaned the females and undermined their authority by raising their voices and making belittling comments to them (*Id.* at para. 31–32). Dr. Becker alleges that female leaders were paid less than the males (para. 24, 43–47, 136), and that females were repeatedly denied promotions in favor of less qualified males as a result of the Board's personnel practices reflecting gender bias and discrimination (para. 24, 28, 66–78, 88, 89, 93–134, 139–51). Dr. Becker alleges that capable, strong-willed female leaders who spoke out were repeatedly targeted and/or

Page 5 of 8

forced out of their positions under suspicious circumstances and/or for pretextual reasons (para. 26, 27, 38, 87, 89, 93, 98–107, 133–35, 166, 186–88, 193–98, 211). Dr. Becker was warned (or threatened, depending on how one views the situation) that the Board would view her as a "complaining woman" and would manufacture a pretextual reason to get rid of her, and so she should "keep [her] head down" to avoid being targeted" because the Board had sufficient influence to negatively affect her future career in the region (para. 78–82). Dr. Becker's Complaint describes how the senior male leaders' actions created an overtly discriminatory environment and culture of fear and intimidation among female leaders, which adversely affected her emotional well-being (para. 33, 36, 93, 189, 214).

Simply put, Dr. Becker's allegations are more than sufficient to state a claim for hostile work environment. *See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015) (setting forth standard for stating a hostile work environment claim). *See also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) ("Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers."); *Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) (explaining that workplace need not be "hellish" and relevant question for a hostile work environment claim is "whether a protected group is experiencing abuse in the workplace, on account of their protected characteristic, to the detriment of their job performance or

advancement."); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004) ("A hostile environment is one that is permeated with discriminatory intimidation, ridicule and insult.") (internal quotation marks and citation omitted).

### 3. Retaliation

Finally, the College argues that Dr. Becker failed to state a Title VII claim for retaliation because she did not allege specific protected expressions or dates—instead making generalized references to "good-faith complaints" and "numerous occasions." According to the College, Dr. Becker therefore failed to allege a causal connection between a specific protected expression and an adverse employment action (Doc. 17, p. 8). But again here, the College's argument is without merit and must fail. Dr. Becker alleged that she complained about gender-based disparate treatment to the President, more than one Board Member, Human Resources, and the interim Chief Administrative Officer (*e.g.*, Doc. 1, para. 48, 64–68, 83, 93, 154–62, 171–80, 183–87). Dr. Becker alleged that she suffered adverse actions, for example, she was denied a promotion, she was stripped of responsibilities and oversight, and her contract was not renewed without any reason given (*Id.* at para. 172–74, 204, 207, 216–20). And Dr. Becker alleges a plausible causal relation between her complaints and the adverse actions she suffered through her numerous allegations about the College's history of treating female leaders in an inferior fashion, the Board members' preference for males and disdain for females, previous female leaders who were pushed out of their positions, and warnings she received about becoming a target (*Id.* at para. 25–27, 34, 36, 69–78, 82, 89, 93, 98–103, 178–80, 187). This is more than enough to state a claim for retaliation.

<u>CONCLUSION</u>

For the reasons explained above, the College's Motion to Dismiss (Doc. 17) is

**DENIED**. The College shall file its Answer to Dr. Becker's complaint within **14 days** of

the date of this Order. *See* FED. R. CIV. P. 12(a)(4).

**IT IS SO ORDERED.**

**DATED: June 10, 2026**

*Mark A. Beatty*
_____

**MARK A. BEATTY**
**United States Magistrate Judge**